## JOHN HARRISON vs. CITY FIRE INSURANCE COMPANY.

A policy of insurance, issued upon a dwelling-house occupied by tenants, and containing a provision that " the policy becomes void when the occupant personally vacates the premises, unless immediate notice be given to this company and additional premium paid," will become void if the building is vacated, and the only notice given thereof is to an agent of the company whose authority is limited " to take applications and countersign policies, to collect and receive cash for premiums, and to issue a ' binder ' on special hazards for ten days," and no additional premium is paid; and it is immaterial that the insured did not know the extent of the agent's authority.

CONTRACT upon a policy of insurance issued by the defendants, an incorporated company of New Haven, Connecticut, upon the plaintiff's dwelling-house in Fall River.

At the trial in the superior court, before *Vose*, J., the following facts appeared: The insurance, which was for three years from the 2d of December 1861, was effected through B. F. Winslow, the defendants' agent at Fall River, under a power of attorney authorizing him " to take applications and countersign policies, to collect and receive cash for premiums, and to issue a ' binder ' on special hazards for the term of ten days." The plaintiff, in his application for insurance, represented the house to be occupied by tenants. The policy contained, among others, the

following stipulations : " Unoccupied premises must be insured as such, or the policy is void." " Houses, barns or other buildings insured as occupied premises, and the contents thereof, or as in, or on occupied premises, the policy becomes void when the occupant personally vacates the premises, unless immediate notice be given to this company and additional premium paid." From the inception of the policy until October 12th 1862, the building was occupied, but on that day it was vacated. The plaintiff introduced evidence that on the following day he verbally informed Winslow that the building was vacant, and that Winslow told him " to lock the door and fasten the windows, and that he supposed that it would be soon occupied again ; " and that the plaintiff fastened up the house as directed. The house was destroyed by fire, from some unknown cause, December 25th 1862. The plaintiff testified that nothing was ever said to him by Winslow about paying any additional premium, and that he did not pay or offer to pay any such additional premium, but that he probably should have done so if Winslow had required it. The plaintiff also testified that he knew nothing of the power or authority of Winslow as agent. The judge instructed the jury that the plaintiff was not entitled to recover, and a verdict was accordingly returned for the defendants, and the plaintiff alleged exceptions.

*T. Weston, Jr.,* for the plaintiff.

*L. T. Willcox,* for the defendants.

Bigelow, C. J. The premises covered by the policy declared on were insured as occupied premises, and it was expressly stipulated in the body of the policy that, in all cases in which premises are so insured, " the policy becomes void when the occupant personally vacates the premises, unless immediate notice be given to this company, and additional premium paid." Under this clause, it is clear that the contract of insurance had terminated several weeks prior to the occurrence of the loss by fire. The notice to the agent that the plaintiff's tenants had eft the premises, and that the premises were vacant, did not fulfil the stipulation in the policy. The agent had no power or authority to receive such notice in behalf of the company. He

was a special agent only, with strictly limited power. He could not issue a valid policy, or enter into contracts generally in behalf of the defendants. He was authorized only to receive and forward applications for insurance to the company, to collect premiums and to bind the company on special hazards for the term of ten days. Beyond this his authority as agent did not extend. He could not receive any notice which would affect the rights of this company under a policy already issued, nor had he any authority to fix an additional premium in consideration of a change in an existing risk, which, by the terms of the policy, the parties had agreed should be deemed an increase of the hazard which the company originally assumed.

It is no answer to say that the plaintiff had no knowledge of the limited extent of the agent's authority. This he was bound to ascertain before dealing with him as agent. No rule of law is more familiar or better settled than that which requires a person who transacts business with a special agent to take notice of the nature and scope of the agent's power. He is put on inquiry by the very fact that he is negotiating with an agent, and is bound to ascertain whether he can bind his principal in the transaction which he purports to carry on in his behalf. If it were not so, there would be no distinction between a special and a general agent, and all restrictions and limitations on an agent's authority would be nugatory. A principal would in all cases be at the mercy of his agent, however carefully and strictly he might have restricted his authority. *Lobdell* v. *Baker,* 1 Met. 201. *Snow* v. *Perry,* 9 Pick. 542. Story on Agency, § 133.

The *St.* of 1861, *c.* 170, relating to agents of insurance companies has no application to a case like the present. That enactment was not designed to change in any way the rules of the common law regulating the power of agents or their authority to bind their principals, but only to declare that certain classes of persons should be deemed to be so far agents of insurance companies as to be liable to the penalty prescribed by Gen. Sts. *c.* 58 § 77. *Exceptions overruled.*